THE BROTHERS AND SISTERS PEDRO, MARÍA RAFAELA, and RAMÓN RIVERA PADRÓ, ETC., Plaintiffs and Appellants, v. ISABEL RIVERA CORREA and MANUEL FRANCISCO RIVERA CORREA, Defendants and Appellees.

No. R-63-253.       Decided February 23, 1966.

196

*Isaías M. Crespo* for appellants. Appellees did not appear.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

This appeal was taken from a judgment of the Arecibo Part of the Superior Court. The question therein is the scope of power of the courts in construing testamentary clauses.

On July 1, 1953, Pedro Rivera Méndez, aged 70, a farmer and resident of Utuado, executed an open will in the city of Arecibo before Notary Isaías Manuel Crespo. He had at that time six children whose names and surnames, as disclosed by the documentary evidence offered, are: (1) Isabel Rivera; (2) Ramona Rivera Correa, born in August 1927; (3) Manuel Francisco Rivera Correa, born in August 1931; (4) Pedro Rivera Padró, born in November 1933; (5) María Rafaela Rivera Padró, born in September 1935; and (6) Ramón Eustaquio Rivera Padró, born in March 1938.

The testator had contracted first marriage with Carmen Olivo Quiñones on July 1, 1919. He became a widower on February 27, 1929.

He set forth in his will that in his extramarital relations from 1914 to 1931 with Evangelista Correa Molina, known

as Lita Correa, he begot his first three children named Isabel, Ramona and Manuel Francisco Rivera Correa. Also, that he had contracted second and last marriage with Carmen Padró Toledo in 1932, having begotten Pedro, María Rafaela and Ramón Eustaquio Rivera Padró.

Pedro Rivera Méndez died on December 5, 1956, under that open will. He was survived by the aforesaid six children, as sole descendants, and his second wife, Carmen Padró Toledo. The latter died on November 14, 1959.

In that will the testator also declared that he owned three small parcels of land situated in the Municipality of Utuado, and in its second, third, fourth, fifth and sixth clauses he directed:

"SECOND: That he is 70 years old and is the legitimate son of Ramón Rivera and Sebastina Méndez, both deceased, and is married to Carmen Padró, having begotten by that marriage three children named *Pablo,* aged 20; *Rafaela,* aged 18; and *Ramón,* aged 16; and that he also has three other children named *Isabel,* aged 30; *Ramona,* aged 25; and *Manuel,* aged 22, born of his marital relations with Lita Correa.

"THIRD: That he bequeaths to his wife, Carmen Padró, the entire free third without any limitation whatsoever.

"FOURTH: That he leaves the entire extra portion to his children, *Pablo, Rafaela* and *Carmen,* begotten by his marriage to Carmen Padró.

"FIFTH: That he bequeaths in favor of his daughter Isabel, the daughter also of Lita Correa, a parcel of two cuerdas of land, to be given her together with the parcel belonging to her in the inheritance, and since the said legatee possesses at present a parcel equal to FIVE CUERDAS, bounded on the North by the Heirs of Maximino Flores, on the West by Gerardo Portalatín, and on the East and South by the main property of the testator and which probably belongs to the said legatee.

THREE CUERDAS of land by inheritance from the testator, as well as the legacy of TWO CUERDAS, both parcels shall constitute the property of FIVE CUERDAS described hereinabove which the aforesaid daughter possesses at present.

"SIXTH: That he designates and institutes· as his sole uni-versal heirs in the remainder of his property his children, *Pablo, Rafaela* and *Ramón,* begotten by his marriage to Carmen Padró, and his children, Isabel, Ramona and *Manuel,* begotten in his marital relations with Lita Torres." (Italics ours.)

On March 15, 1960, the children, Pedro, María Rafaela and Ramón Eustaquio Rivera Padró and Ramona Rivera Correa, filed (in an action commenced in November 1959) an amended complaint in the Arecibo Part of the Superior Court for "Amendments to a Will," against their sister Isabel and brother Manuel Francisco Rivera Correa. After setting forth the pertinent part of the text of the said open will and the demise of testator Pedro Rivera Méndez, they alleged therein:

"That when executing the said will several errors were committed in the names of the heirs which appear to be mis-taken, it being useful, necessary and convenient for the heirs of the said decedent to amend the said will since heir Pedro Rivera Padró appears in the will under the name of Pablo, heiress María Rafaela Rivera Padró appears in the will under the name of Rafaela, heir Manuel Francisco Rivera Padró appears in the will under the name of Manuel, heir Ramón E. Rivera Padró appears in the will under the name of Ramón. Heirs Pablo, Rafaela and Carmen appear in the fourth clause of the will instead of Pedro, María Rafaela and Ramón E. The name of Isabel's mother appears in the will as Lita Correa instead of Evangelista Correa. And if the will is amended in the manner sought, the names of the said heirs and of the other persons connected with them will appear with their real names."

Manuel Francisco Rivera Correa answered the amended complaint on October 22, 1962, admitting all the averments therein. In May 1963 codefendant Isabel Rivera Correa an-swered the amended complaint under the name of "María Isabel Rivera Olivo." She denied all the averments and also alleged:

"As Matter of Defense:

"The defendant alleges: That she is the legitimate daughter of Pedro Rivera Méndez and of his wife, Carmen Olivo Quiñones, and that defendant María Isabel Olivo was born on January 5, 1925, in Lares, Puerto Rico.

"Wherefore, I respectfully pray this Hon. Court to dismiss the complaint and, consequently, to declare that María Isabel Rivera Olivo is the legitimate daughter of Pedro Rivera Méndez and Carmen Olivo, and to impose on plaintiffs the costs, expenses and attorney's fees."

The case went to trial. Plaintiffs' oral evidence consisted of the oral testimonies of Pedro and Ramón Rivera Padró, Isabel Rivera Correa and Evangelista Correa Molina. The documentary evidence, of some 15 pieces of evidence, consisted of several copies of public deeds, a judgment in a proceeding for declaration of heirship, several certificates of the Registry of Vital Statistics and copies of certain baptismal certificates. The evidence of codefendant Isabel Rivera Correa consisted only of her testimony and of copy of her birth record as daughter of Carmen Olivo Quiñones, the testator's first wife, made on January 5, 1925, under the name of "María Isabel Rivera Olivo."

The trial court rendered judgment on September 27, 1963, "dismissing the complaint in this case, with prejudice." It made no pronouncement on defendant's "Matter of Defense."

Plaintiffs timely requested a writ of review. We issued it on January 31, 1964, but for the purpose of reviewing the judgment appealed from "as respects the filial conclusion of defendant Isabel Rivera Correa." On May 28, 1965, at the request of appellants, we enlarged "the sphere, scope and effects of the writ of review in the present appeal on all possible reviewable aspects, points and matters of which the final judgment appealed from may be the object." We granted to each party a term of 30 days to file additional briefs and

to attach to the record any complementary documents they may wish to offer.

Plaintiffs-appellants have filed an extensive and very elaborate brief in support of their petition for review. Defendants-appellees have not objected at all to the issuance of the writ nor to the enlargement of its ambit, nor have filed any brief in answer to appellants'.

Appellants allege that the trial court erred (1) in holding that it lacked power in law to interpret the testamentary text for the purpose of declaring whether the testator had committed any error in the names of the children whom he designated as his heirs and in the names of the other persons mentioned in the will, and (2) in concluding that the mother of the testator's daughter, named Isabel, was his first wife, Carmen Olivo Quiñones, and not Evangelista Correa Molina.

In the light of the facts found proved, of the evidence offered, and of the applicable law, and regarding the action on interpretation of the will, which is the only question involved in this appeal, appellants are right. The judgment appealed from should be reversed.

1. The different errors in the names of the heirs committed in the will were pointed out in the amended complaint, in the specific terms stated above. As to those errors, in its findings of fact the trial court set forth verbatim:

"Rivera Méndez executed a will on July 1, 1953, and plaintiff heirs pray that the will be amended in order to correct several errors committed therein.

"On the evidence heard, the court concludes that in the second, fourth, fifth and sixth clauses, wherever mention is made of the children of the testator by his marriage to Carmen Padró, Pablo is the same person as Pedro Rivera Padró, Rafaela is the same person as María Rafaela Rivera Padró, and Ramón is the same person as Ramón E. Rivera Padró and Ramón Eustaquio Rivera Padró.

. . . . . . . .

"As to Ramona and Manuel, the latter is the same person as Manuel Francisco Rivera Correa, and their mother is Lita Correa, who is the same person as Evangelista Correa. In the third clause where it reads 'Carmen,' the testator refers to Ramón, who is the same person as Ramón E. Rivera Correa and Ramón Eustaquio Rivera Correa."

In the conclusions of Law the trial court also said on the same matter:

"In the present action the court identified the parties and found that in the second, fourth, fifth and sixth clauses the person named Pablo is the same person as Pedro Rivera Padró, son of the testator by his marriage to Carmen Padró; the person named Rafaela is the same person as María Rafaela Rivera Padró, the daughter of the testator by his marriage to Carmen Padró; and the person named Ramón is the same person as Ramón E. Rivera Padró, known as Ramón Eustaquio and the son of the testator by his marriage to Carmen Padró. In the third clause where Carmen is named, the testator referred to Ramón, known as Ramón E. and Ramón Eustaquio, surnamed Rivera-Padró.

"The court also identified and found that Ramona and the heir named Manuel, the latter being the same person as Manuel Francisco Rivera Correa, these surnames being also those of Ramona, are the children of the testator and of the person named Lita Correa, who is the same person as Evangelista Correa."

Those conclusions conform to the prayer of the amended complaint.[1] This notwithstanding, the court declared itself

---

[1] Sections 701 and 702 of the Civil Code (31 L.P.R.A. §§ 2290 and 2291) provide:

"§ 2290. How heirs designated

"The testator shall designate the heir by his name and surname, and when there are two having the same names, he must state some circumstance by which the one designated may be identified.

"Even though the testator may have omitted the name of the heir, should he designate him in such manner that there can be no doubt as to what person has been designated, the designation shall be valid.—Civil Code, 1930, § 701."

without power in law to render judgment adjudicating the true and correct sense, meaning and intelligence of the words employed by the testator to designate erroneously the names of his heirs. On this point, it said:

"A will is absolutely a personal act. The making of it, either wholly or partially, cannot be left to the discretion of a third person, nor can it be made through a trustee or agent. Thus reads the first paragraph of § 619 of the Civil Code of Puerto Rico, 1930 ed. (31 L.P.R.A. § 2124).

"Plaintiff heirs may not at this time urge that this will be considered amended. However, the second paragraph of § 701 and the first paragraph of § 702 of the Civil Code (31 L.P.R.A. §§ 2290, 2291) provide that even though the testator may have omitted the name of the heir, should he designate him in such manner that there can be no doubt as to what person has been designated, the designation shall be valid; the error in the name, surname or qualities of the heir shall not vitiate the designation when it may be possible, in any other manner, to know with certainty who is the person appointed."

The claim made by the affected heirs is not contrary to the principle consecrated by § 619 of our Civil Code that the will is absolutely a personal act and that the making of it, either wholly or partly, cannot be left to the discretion of a third person, nor can it be made through a trustee or agent. Since one heiress objected to the construction of the will in that fashion, the heirs affected invoked the unquestionable power of the Superior Court in the matter of construction of wills and other figures governed by our law of successions.

---

"§ 2291. Errors in name or qualities; impossibility of identification

"An error in the name, surname, or qualities of the heir shall not vitiate the designation when it may be possible, in any other manner, to know with certainty who is the person appointed.

"If among persons of the same name and surname there is equality of circumstances, and the latter are such as not to permit the identification of the person who is designated, none of them shall be an heir.—Civil Code, 1930, § 702."

The statements or expressions of a last will are not always so perfect and complete as not to leave room for doubt. As in the case of legislative provisions, in case of doubt, error, vagueness or uncertainty, it is necessary to construe them in order that they be correctly carried out. In this connection, our Civil Code provides a general rule in its § 624 and several special rules in §§ 619, 624, 678, 680, 694, 698, 700, 701, 702, 720 and 721, among others.

■ According to the doctrine, the rules of construction of provisions of law and of contracts apply by analogy to the construction of wills. However, the general or special rules on wills are ranked at the top of the scale of value of the rules.

■ We have repeatedly held that the question of construction of testamentary provisions in case of controversy among the heirs as to their scope and meaning is for the courts of justice. *Luce & Co.* v. *Cianchini*, 76 P.R.R. 155, 161 (1954); *Junghanns* v. *Cornell University*, 71 P.R.R. 630, 638 (1950); *Colmenero* v. *Fernández*, 63 P.R.R. 882, 886 (1944); *Heirs of Cortijo* v. *Cruz*, 43 P.R.R. 804 (1932).

■ In *Ortiz* v. *Bermúdez*, 70 P.R.R. 674, 681 (1949), a person correctly named Pedro Ortiz Torres had been designated as heir in a will by the name of Pedro Ortiz Flores. It was alleged in the appeal that this vitiated the designation of heir made in his favor. We held, relying on § 702 *supra*, that such error did not vitiate it and that it was "undeniable that, although an error was committed in designating the second surname of this heir, it was known with certainty who was the person appointed." The case under consideration presents an identical situation.

■ Since 1931 we have a statute on declaratory judgments—Act No. 47 of 1931 (Sess. Laws, p. 378)—which, at the instance of every person interested in a will, vests the Superior Court with broad powers to declare rights,

status and other judicial relations, whether or not further relief is or could be claimed. According to its provisions, the person may obtain a determination of any difference in regard to the construction or validity of any will.[2]

■ The construction of wills consists in an intellectual operation the finality of which is to inquire into the testator's will, clarifying and ascertaining the actual meaning of its expressions and, if necessary, filling the gaps of its declarations. See De Casso y Cervera, *Diccionario de Derecho Privado.*

2. We shall next consider the last error, but only insofar as its consideration bears relation to or affects the only question involved in this appeal which we are bound to decide: the testamentary construction.

The trial court interpreted as follows the statements of the testator relating to his daughter Isabel Rivera: "Wherever Isabel, 30 years of age, is named as the daughter of Lita—familiar name of Evangelista Correa Molina—she is the same person as María Isabel Rivera Olivo, daughter of Carmen Olivo, the testator's first wife." Yet, in its conclusions of law it said: *"This identification is contrary to the content of the will, since it is alleged therein that María*

[2] Section 4 of this Act provides:

"§ 2994. Executor, etc.

"Executors, receivers, trustees, tutors, creditors, legatees, heirs, successors in interest or *cestuis que trust* acting in such capacities or in representation of other persons concerned, may apply for and obtain a declaration of rights or judicial relations in all cases where trusts, estates, or the property of minors, incapacitated or insolvent persons are administered:

"(a) To determine classes of creditors, legatees, heirs, successors in interest and others; or

"(b) To direct executors, administrators or trustees to execute or refrain from executing any certain act in their capacity as such; or

"(c) To determine any question arising in the administration of the property or trust, including construction of wills and of other documents.—Apr. 25, 1931, No. 47, p. 378, § 4, eff. 90 days after Apr. 25, 1931."

*Isabel is the daughter born of the relations of the testator with Evangelista Correa, known as Lita."* (Italics ours.)

The documentary evidence offered by heiress Isabel, and admitted for the purpose of proving that she was the daughter of Carmen Olivo Quiñones, consisted in a certificate of birth issued by the Lares office of the Registry of Vital Statistics. From that certificate it appears that the birth record was entered on February 19, 1925, of a person named "María Isabel Rivera Olivo," born on January 5, 1925, as the daughter of Pedro Rivera Méndez, born in Lares, and of Carmen Olivo Quiñones, born in Utuado. In her testimony she said that she knew that Carmen was her mother because she had told her so.

█ The value of that certificate, for the purposes of construction of the will, was, in our opinion, fully overcome by the abundant documentary evidence of the following acts, facts and events performed or which occurred from 1914 until the time of executing the will:

A. *Acts of the person alleging to be her biological natural mother, Evangelista Correa Molina:* The latter testified: That she had marital relations with Pedro Rivera Méndez in the ward of Ángeles of Utuado from 1914 until July 1919, while both were single; that Isabel was born of those relations on June 21, 1915; on November 28, 1915, both of them baptized her by that name in the Catholic Church of Utuado; on July 1, 1919, when Isabel was about three and one half years old, her father, Pedro Rivera Méndez, contracted first marriage with Carmen Olivo Quiñones; that as a result thereof, Evangelista Correa Molina left the ward of Ángeles and went to live in Arecibo, and Rivera Méndez then took Isabel to live with his wife Carmen; that when she was 10 years old they registered her in the Civil Registry as the daughter of both spouses; that Carmen reared her. She said that in 1926 she returned to the same ward of Ángeles,

resumed her relations with Rivera Méndez, having begotten Ramona and Manuel Francisco Rivera Correa.[3]

B. *Acts of her father:* (1) As a result of the death of his first wife, Carmen Olivo Quiñones, Pedro Rivera Méndez filed, as petitioner, in the former District Court of Arecibo, a proceeding for declaration of heirship.

In the initial petition he stated under oath that his wife had not left any legitimate or natural descendants nor as-

---

[3] On different occasions this lady said that she had given birth to Isabel, although she had not reared her. Tr. Ev. 36, 37, 38, 39, 42, 43, 46. The part of her testimony which was repeated several times is as follows:

"Q. Your name?

A. Evangelista Correa Molina.

Q. Have you any children?

A. I have children.

Q. What are their names?

A. Héctor Manuel Rivera, Ramona Rivera and Isabel Rivera, who is my daughter. I gave birth to her, but I did not rear her.

Q. You gave birth to Isabel?

A. Yes, sir.

Q. Who is Isabel's father?

A. Pedro Rivera Méndez.

Q. Is he living?

A. He died.

Q. Were you married to him?

A. No, sir. I was not married to him.

Q. Do you know whether he was married?

A. Yes, sir.

Q. To another woman?

A. Yes, sir.

Q. To whom?

A. To Carmela Olivo.

Q. Is Carmela Olivo living?

A. She died.

Q. Did Carmela Olivo have any children?

A. She had no children; the only daughter was Isabel, whom she reared.

Q. When you were having marital relations with Pedro, was Pedro already married to Carmela Olivo?

A. Yes, sir.

Q. This lady who is there, pointing to defendant without saying her name, who is this lady?

A. This lady is Isabel Rivera Olivo.

Q. Why do you say that she is Isabel Rivera Olivo?

A. Because I tell you, I gave birth to her, but I did not rear her.

cendants, "the only persons with right to her inheritance being her sisters, María de los Dolores and Bárbara Fundadora Olivo Quiñones, and that she did not leave any other person who could succeed her as collateral"; and prayed that his aforesaid sisters-in-law jointly with him be adjudged sole heirs of his deceased wife in the legal quota. It was so adjudged by the court by judgment of October 21, 1938. In that proceeding he did not mention at all María Isabel Rivera Olivo, the decedent's alleged daughter.

(2) By public deed executed in Lares on July 20, 1929, before Notary José D. Rodríguez, Pedro Rivera Méndez declares: "That Carmen died intestate without leaving any descendants or ascendants who could inherit from her, wherefore the inheritance corresponds to the decedent's collaterals." By that same deed his wife's sisters sold to him their hereditary rights and shares.

(3) On November 1, 1943, Pedro Rivera Méndez, in his own right and as sole assignee at that time of the property left by his deceased wife, ratified a certain sale made by him during the latter's lifetime in favor of José Martes Soto.

(4) By public deed No. 54 executed in the city of Arecibo on August 4, 1959, before Notary Isaías M. Crespo, in which codefendant "María Isabel Rivera" and her mother, Evangelista Correa, appeared personally as executing parties, Pedro Rivera Méndez set forth among other things: ". . . that

---

Mother is the one who rears.

Q. What did you agree upon with Don Pedro?

Mr. Susoni: That is a leading question.

Mr. Crespo: We withdraw it.

Q. How come Isabel came to live with Carmen Olivo?

A. She came when she was small, she could not talk yet.

Q. How come she went to live, if you know, with Carmen Olivo?

A. Because her father took her away from me while she was a little child and took her to his wife.

Q. To Carmen Olivo?

A. Yes, sir."

the appearing party, María Isabel Rivera, is his daughter born of his relations with Evangelista Correa."

(5) In the said will Pedro Rivera Méndez set forth: ". . . and he also has three other children named Isabel, aged 30; Ramona, aged 25; and Manuel, aged 22, born of his marital relations with Lita Correa." The fifth clause, whereby the testator leaves a legacy to Isabel, commences as follows: "FIFTH: That he bequeaths to his daughter Isabel, also the daughter of Lita Correa, a parcel of two cuerdas." By the Sixth clause he designated "his children . . . and his children, Isabel, Ramona and Manuel, born of his marital relations with Lita Correa, as his universal heirs" in the remainder of the property.

C. *Acts of Isabel Rivera Correa herself jointly with her presumptive biological parents:* The said public deed No. 54 executed in Arecibo on August 4, 1950, by María Isabel Rivera herself, who was then married and 35 years of age— some 12 years having elapsed since the declaration of heirship in favor of Carmen Olivo Quiñones' sisters and 21 years since the purchase from them by Pedro Rivera Méndez of all the property left by Carmen—jointly with her biological parents and José Martes Soto, seems to have been executed for the purpose of dissipating any thread of doubt as to who was the mother of Isabel, since, if Carmen actually was, Martes Soto's title to the totality of the property which he had purchased verbally from the Rivera-Olivo spouses would have been partly vitiated.

After making reference in that public deed of 1950 to the old verbal sale made in favor of Martes Soto and to its ratification by Pedro in 1943, the executing parties set forth:

"FIRST: PEDRO RIVERA MÉNDEZ ratifies in its entirety the content of the deed executed before me on the first day of November nineteen hundred and forty-three, stating further that the appearing party, María Isabel Rivera, is his daughter born of his relations with Evangelista Correa. And likewise

the said gentleman waives in favor of José Martes Soto the rights purchased by him from María de los Dolores and Bárbara Fundadora Olivo Quiñones by deed executed on July twenty nineteen hundred and twenty-nine before Notary José D. Rodríguez, insofar as such rights form part of the property described hereinabove; and the said gentleman further waives in favor of Martes Soto the right of surviving spouse's usufructuary quota belonging to him in the said property.

"SECOND: *María Isabel Rivera and Evangelista Correa declare that the former is the daughter of the latter; however, since the former is registered in the Registry of Vital Statistics as the daughter of Pedro Rivera Méndez and of his deceased wife, Carmen Olivo, the said appearing party, María Isabel Rivera, waives any right which she may have to the property hereinabove described in favor of JOSÉ MARTES SOTO, in consideration of her love for her father and of the fact that she considers herself the daughter of her mother, Evangelista Correa, and not of Carmen Olivo Quiñones, as she appears to be in the Registry of Vital Statistics.*" (Italics ours.)

D. *Ramona Rivera Correa,* Isabel's full sister, alleged in the original as well as in the amended complaint that her sister Isabel was the daughter of Evangelista Correa Molina.

E. *Manuel Francisco Correa,* Isabel's other full brother, who was also joined as a party codefendant, in answering in his own right the amended complaint from the city of New York, set forth under oath:

"1. . . . that my father left a will which calls for the amendments alleged in the said amended complaint.

"2. That my sisters Isabel and Ramona Rivera Correa and I are the children of Pedro Rivera Méndez and of Evangelista Correa, but owing to an error my said sister, Isabel Correa, is registered as the daughter of my said father and of Carmen Olivo."

The preponderance of the evidence on the question of maternity referred to in the will supported the testator's statements in the sense that Isabel was his and Lita Correa's daughter. It was not rational, nor justiciable, nor juridical

to attribute the following meaning or significance to the testator's statements: "Wherever Isabel is named . . . as the daughter of Lita, she is the same person as María Isabel Rivera Olivo, daughter of Carmen Olivo, the testator's first wife." This, as the trial court itself said, contradicted the will. It is a substitution of statements made by other new ones.

The father's conduct since 1925 until 1953, the uncontradicted statements of the presumptive mother, Evangelista Correa Molina, and the conclusive confession of Isabel Rivera herself, perpetuated notarially on August 4, 1950, in the sense that she was the daughter of Evangelista Correa and not of Carmen Olivo, should not have been ignored at the crucial hour of making the conclusions on the testamentary statements being construed.

We notice that as respects Isabel there are conflicting and unreconcilable acknowledgments on her maternity. If the content of the certificate of 1925 of the Registry of Vital Statistics of Lares is correct, she is the daughter of. Carmen Olivo Quiñones. On the contrary, if the content of the baptismal certificate of 1915, the content of the judgment on declaration of heirship of Carmen, the content of the deed of 1950 executed by Isabel herself, Pedro and Evangelista, and the content of the will are correct, then her mother is Evangelista Correa Molina.

However, as respects the action exercised, only the efficacy of elements or factors of hermeneutics may be attributed to such conflicting acknowledgments in the solution of the problem of interpretation of the will of Pedro Rivera Méndez in which only his six children, as his children, have an interest. The successors of Carmen Olivo Quiñones have no patrimonial interest in that inheritance.

■ Isabel Rivera's counterclaim contained in her answer seeking that it be declared in that action, without further procedural requisites, "that María Isabel Rivera is the legiti-

mate daughter of Pedro Rivera Méndez and of Carmen Olivo," constituted, in addition to a claim of a family status, a collateral attack on the validity of the judgment declaring that Carmen left no descendants nor ascendants and that her sole and universal heirs and successors were her two sisters, and which was recorded in the Registry of Property. It is also a collateral attack on the sale made by them of the rights and shares which they acquired from the decedent, all of which was done without suing or bringing to trial in any manner whatever those heiresses or their successors. These sisters never lawfully relinquished, nor could relinquish, their status of heirs.

Where a person may enjoy a family status (the character of which is indivisible, inalienable and imprescriptible), no testator may deprive him of such right; his testamentary provisions in such sense have no more force than a statement of the testator. See *Gastón* v. *Heirs of Franceschi*, 43 P.R.R. 293, 295 (1932); Judgment of the Supreme Court of Spain of June 27, 1950, XXXI *Jurisprudencia Civil* 533 (New Series).

The trial court acted correctly in not making in its judgment any pronouncement on the counterclaim.

The judgment appealed from will be reversed and the case remanded instead to the Arecibo Part of the Superior Court for rendition of judgment in conformity with the prayer of the amended complaint and this opinion.